BARNHILL, J., concurring in part and dissenting in part.
WINBORNE, J., joins in concurring opinion of Barnhill, J.
DENNY, J., concurring.
The three cases above entitled, because of their similarity in factual and legal features and interconnected interests, were consolidated for hearing, and by consent of all parties heard by Judge Hoyle Sink on agreed facts without a jury.
The actions are brought for writs of mandamus to compel defendants, treasurers of Guilford County, the City of Greensboro, and the City of High Point, respectively, to pay to the plaintiff appropriations made by their respective boards and governing bodies to plaintiff from funds now in their hands. It is conceded by the defendants that plaintiff is entitled to the writs if the appropriations were within the constitutional and lawful power of the individual and several boards to make.
Omitting purely formal matter, the statement of fact in appellants' brief, to which there is no objection, may be adopted as a concise summary of the pertinent facts. Where necessary, this will be supplemented from the stipulations of the parties.
"The plaintiff is a body politic and corporate of the State of North Carolina, created, organized and existing under and by virtue of Chapter 98, Public-Local and Private Laws of 1941, and amendments thereto, and is now the owner of and in possession of all of the property, real and personal, used in the operation of the Greensboro-High Point Airport and is now operating said airport.
"Guilford County is a body politic and corporate of the State of North Carolina, and prior to June 20, 1942, owned and operated the Greensboro-High Point Airport. The defendant, W. Clarence Johnson, is the duly elected qualified and acting Treasurer of Guilford County. On the 23rd day of June, 1945, the County Commissioners of Guilford County adopted an appropriation resolution for the fiscal year 1945-1946, which contained an appropriation of $20,000 for the Greensboro-High Point Airport, to be paid wholly and entirely from funds derived from sources other than ad valorem
taxes. Plaintiff has made demand upon said W. Clarence Johnson, as Treasurer of Guilford County, for the payment of said appropriation to it which was refused by him because he had *Page 4 
been advised that the County Commissioners of Guilford County could not lawfully make said appropriation, and that he as Treasurer, therefore, had no legal right to make such payment.
"City of Greensboro is a municipal corporation duly created and chartered by the General Assembly of the State of North Carolina, Chapter 37, Private Laws of 1923, and amendments thereto, and the defendant, Hargrove Bowles, is the duly appointed qualified and acting Treasurer of the City of Greensboro. The City Council of the City of Greensboro, on the 19th day of September, 1944, created a Capital Reserve Fund. On the 3rd day of July, 1945, the City Council of the City of Greensboro adopted an ordinance authorizing the withdrawal of $27,000 from said Capital Reserve Fund for the purpose of making improvements at the Greensboro-High Point Airport, said funds being from receipts from revenues derived from sources other than ad valorem taxes, which are not pledged or otherwise applicable by law to the payment of existing debt of the City of Greensboro. On the 4th day of September, 1945, the City Council of the City of Greensboro adopted a resolution, finding that the legal requirements for the withdrawal of said funds, including the approval of the Local Government Commission, had been met and appropriated said sum of $27,000 to the Greensboro-High Point Airport Authority. Plaintiff has made demand upon said Hargrove Bowles, as Treasurer of the City of Greensboro, for the payment of said appropriation to it which was refused by him because he had been advised that the City Council of the City of Greensboro could not lawfully make said appropriation, and that he, as Treasurer, therefore, had no legal right to make such payment.
"City of High Point is a municipal corporation duly created and chartered by the General Assembly of the State of North Carolina, Chapter 107 of the Private Laws of 1931, and amendments thereto, and the defendant, Lois Welborn, is the duly appointed, qualified and acting Treasurer of the City of High Point. The City Council of the City of High Point, on the 10th day of August, 1945, adopted a budget ordinance for the City of High Point for the fiscal year 1945-1946, which contained an appropriation for the Greensboro-High Point Airport Authority of $25,000 from funds derived from the sale of properties and unappropriated surplus revenues from sources other than the levy of ad valorem taxes which are not pledged or otherwise applicable by law to the payment of the existing debt of the City of High Point. Plaintiff has made demand upon said Lois Welborn, as Treasurer of the City of High Point for the payment of said appropriation to it which was refused by her because she had been advised that the City Council of the City of High Point could not lawfully make said appropriation, and *Page 5 
that she as Treasurer, therefore, had no legal right to make such payment."
Certain statutes are cited in the stipulation as necessary to a determination of the controversy, which are here reproduced by direct quotation in part, or summarized. Portions considered in the argument as more important to decision are printed in italics. Numerals relate to sections and subsection.
Public-Local Laws 1941, chapter 98, as amended by 1943 Session Laws, chapter 601.
The act is captioned: "AN ACT ENABLING THE COUNTY OF GUILFORD TO ESTABLISH AN AIRPORT AUTHORITY FOR THE MAINTENANCE OF AIRPORT FACILITIES IN THE COUNTY OF GUILFORD FOR THE CITIZENS OF GREENSBORO, HIGH POINT, GUILFORD COUNTY AND VICINITY."
(1) It creates the "Greensboro-High Point Airport Authority" as a body corporate, with powers and jurisdiction enumerated; (2) to consist of five members, two of whom shall be resident voters of Greensboro, two resident voters of High Point, and one from Guilford County at large. One each of these is appointed by the City Council of Greensboro and the City Council of High Point, from resident members, and three are appointed by the Commissioners of Guilford County. Their terms are fixed, and they take oaths of office. (3) They constitute a board of directors and pass by-laws relating to management. (4) Power is given them to "purchase, acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports or landing fields" within Guilford County; and to "purchase, improve, own, hold, lease and/or operate real or personal property" — to borrow money, issue bonds secured by mortgages with
the consent of Guilford County, upon any property held or to be held by it. To sue and be sued; to acquire by purchase lands for construction and maintenance and operation of airports anywhere in Guilford County; to make contracts and hold personal property, and acquire interest in any airport existing in Guilford County. (4-1) To make rules and regulations and adopt schedule of fees and charges not in conflict with State law or rules and regulations of the Civil Aeronautics Administration of the Federal Government. (4-2) To issue bonds, notes or securities upon approval of Guilford County Commissioners and Local Government Commission; (4-3) to dispose of property upon approval of the Commissioners of Guilford County; (4-4) to purchase insurance; (4-5) to authorize or deny or withdraw the right of any person, firm or corporation to construct, operate or maintain any airport or landing field within Guilford County.
"Sec. 5. The Airport Authority is hereby authorized and empowered to acquire from the County of Guilford, the Cities of Greensboro, and High Point, by agreement therewith, and such county and cities are *Page 6 
hereby authorized and empowered to grant and convey either by gift or for such consideration as it may be deemed wise, or any real or personal property which it now owns or may hereafter be acquired, and which may be necessary for the construction, operation and maintenance of any airport located in the County of Guilford.
"Sec. 6. Any lands acquired, owned, controlled or occupied by the said Airport Authority shall, and are hereby declared to be acquired, owned, controlled and occupied for a public purpose."
Sec. 7 authorizes the acquisition of private property for airport purposes by purchase, gift, devise or exercise of the right of eminent domain.
Sec. 8 requires annual reports to Commissioners of Guilford County. "The said Airport Authority shall be regarded as the corporate instrumentality and agent for the County of Guilford for the purpose of developing airport facilities in the County of Guilford, but it shall have no power to pledge the credit of the County of Guilford, or any subdivision thereof, or to impose any obligation upon the County of Guilford or any subdivision thereof, except and when such power is expressly granted by statute or the consent of the County of Guilford.
"Sec. 9. All rights or powers given to the counties or municipalities by the statutes of North Carolina, which may now be in effect or be enacted in the future relating to the development, regulation and control of municipal airports and the regulations of aircraft are hereby vested in the said Airport Authority, and the County of Guilford may delegate its powers under the said acts to the Authority and the Authority shall have concurrent right with the County of Guilford to control, regulate and provide for the development of aviation in the County of Guilford."
Sections 10, 11 and 12 omitted as unessential.
1945 Session Laws, chapter 137, authorizes investment of funds in certain named securities, purchase of its outstanding bonds and authorizes the Authority to operate on any airport premises "restaurants, agricultural fairs, tracks, motion picture shows, and other amusements."
1945 Session Laws, chapter 206, captioned as follows: "AN ACT ENABLING GUILFORD COUNTY AND CERTAIN MUNICIPALITIES LOCATED THEREIN TO ISSUE BONDS AND LEVY AD VALOREM TAXES FOR AIRPORTS AND AIRPORT FACILITIES IN GUILFORD COUNTY" — purports to authorize Guilford County and the cities of Greensboro, High Point and Gibsonville to issue bonds, notes, and certificates of indebtedness, when authorized by popular vote in the respective county and municipalities, and levy ad valorem taxes "for the promotion, purchase, operation, repair, maintenance, expansion or construction of airports, airport facilities, and parking areas in Guilford County. It further provides that the act shall not repeal any of the provisions of chapter 98 of the Public-Local *Page 7 
Laws of 1941, as amended by chapter 601 of the 1943 Session Laws of North Carolina, and shall not be construed as a limitation on powers possessed by the county or municipalities involved; but further provides that all laws and clauses of laws in conflict with the Act are repealed "notwithstanding any charter provision of any city or town or any public, local or private act."
Upon the hearing Judge Sink granted writs of mandamus as prayed for, and all of the defendants excepted and appealed.
Preliminary to a discussion of the questions involved in the appeal, there are certain postulates which must be conceded:
(a) The establishment and maintenance of an airport is a public purpose within the objects of municipal expenditure. Goswick v. Durham,211 N.C. 687, 191 S.E. 728; Turner v. Reidsville, 224 N.C. 42,29 S.E.2d 211; City of Reidsville v. Slade, 224 N.C. 48, 29 S.E.2d 215.
(b) It is not a necessary expense, however, and debt may not be incurred or taxes levied for that purpose without a vote of the people. Sing v.Charlotte, 213 N.C. 60, 197 S.E. 151.
(c) Other conditions favorable, the municipality may appropriate for building and maintaining the facility out of funds on hand not obligated to other uses. Goswick v. Durham, supra; Adams v. Durham, 189 N.C. 232,126 S.E. 611; Nash v. Monroe, 198 N.C. 306, 151 S.E. 634; Mewborn v.Kinston, 199 N.C. 72, 154 S.E. 76; Burleson v. Board of Aldermen,200 N.C. 30, 156 S.E. 241.
(d) The municipal authority to construct, maintain and operate such airport may be confided to a municipal corporate authority created for that purpose by appropriate legislative action. Turner v. Reidsville, supra;City of Reidsville v. Commissioners, supra; Brockenbrough v. Commissioners,134 N.C. 1, 17, 46 S.E. 28; Webb v. Port Commission, 205 N.C. 663,172 S.E. 377; Wells v. Housing Authority, 213 N.C. 744, 197 S.E. 693;Cox v. City of Kinston, 217 N.C. 391, 8 S.E.2d 252; Mallard v.Housing Authority, 221 N.C. 334, 20 S.E.2d 281; Benjamin v. HousingAuthority, 198 S.C. 79, 15 S.E.2d 737. *Page 8 
(e) The county and cities concerned may lawfully join in such an enterprise if each of them is benefited by it. G.S., 63-4.
It is within the stipulated facts that the several appropriations made to the plaintiff are out of funds now in their hands, in each case, not derived from ad valorem taxes, but mainly from the sale of property, and it is not disputed that the funds are free from other specified purpose or legal commitment. There is nothing in the record itself to indicate otherwise, and we are bound by the stipulation on which the court below acted. In this situation no question of credit or taxation in violation of Article VII, section 7, is involved, and the prohibition constituting theratio decidendi in Sing v. Charlotte, supra, does not apply.
The main objections which have been urged are that the several acts of the Legislature mentioned in the statement have created in the plaintiff a municipal corporation, to all intents and purposes independent and distinct from the county or municipalities it is intended to serve, and have so insulated it as to deprive the municipalities of the legal right to contribute to it under the guise of appropriating money for a public purpose; that the statute fails to give to the municipalities an adequate control of the Airport Authority; and that there is no express language in the Act creating the Authority an agent of the cities of Greensboro and High Point.
These objections are similar in aspect, and the answer to each of them lies in the broad scope of legislative discretion in statutes dealing with towns and cities, and in the actual recognition given the plaintiff Airport Authority as an agency of these municipalities and the authority given to Guilford County, Greensboro and High Point to deal with it in the several pertinent statutes made a part of the agreed facts. Chapter 98, Public-Local Laws of 1941, as amended by chapter 601, Session Laws of 1943, secs. 1 and 2; chapter 206, Session Laws of 1945.
Our Constitution does not operate as a grant, but as a limitation on the legislative power; and all powers not withdrawn through its restrictions are reserved to the people to be exercised by their representatives in the Legislature. Yarborough v. N.C. Park Commission, 196 N.C. 284,145 S.E. 563. Since the prohibition of Article VII, sec. 7, of the Constitution is concededly not applicable to the present case, and in the absence of other constitutional restrictions, the subjects dealt with in the statutes under review fall within these reserved powers. We have no power to review a statute with respect to its political propriety as long as it is within the legislative discretion and has a reasonable relation to the end sought to be accomplished.
"Public Purpose" as we conceive the term to imply, when used in connection with the expenditure of municipal funds from the public *Page 9 
treasury, refers to such public purpose within the frame of governmental and proprietary power given to the particular municipality, to be exercised for the benefit, welfare and protection of its inhabitants and others coming within the municipal care. It involves reasonable connection with the convenience and necessity of the particular municipality whose aid is extended in its promotion.
If the appropriations made by the county and municipalities were indeed made, as a mere gift, to another political subdivision — another town or city of an independent governmental capacity, incapable of performing the public service which has become the felt need of the contributing municipality, the authority for such a donation might be questioned. But that situation is not before us. The plaintiff Airport Authority is neither a private corporation nor a political territorial subdivision. It is aquasi-municipal corporation of a type known since McCulloch v. Maryland, 4 Wheat., 316, and commonly used in this and other states to perform ancillary functions in government more easily and perfectly by devoting to them, because of their character, special personnel, skill and care. The legality of the appropriations to its support as involving a public purpose does not depend on the strict propriety of the terms of the creating act as a piece of ideal legislation, as much as it does upon the nearness or remoteness of the benefits enjoyed by the municipality through its operation with respect to the public service sought to be promoted. If the adjuvant corporation is invested with the power and is given the capacity to meet the demand, the legal requirements justifying aid from the public funds have been met. The fact that other and even greater powers have been given to the corporation than those absolutely necessary to the performance of the particular function is, as we have said, a matter within the legislative discretion. Furthermore, the reciprocal and functional relation between the Greensboro-High Point Airport Authority and the cities whose name it bears is outstanding. Proximity to these large communities, which are in key positions with respect to trade and transportation over a wide area, is as essential to the existence of the airport as the latter is to the progress and expansion of the cities themselves and the convenience of their inhabitants and those who communicate or deal with them.
In considering questions concerning the powers conferred on thequasi-municipal corporation and the control over it exercised by the municipality with which it is connected, it must be remembered that counties, cities and towns derive practically all their powers from the Legislature, through appropriate statutory law, rather than constitutional grants; and the Legislature, in implementing their functions or in creating a separate corporate agency to serve a particular governmental purpose, is not bound by the limitations of the general statute under which the *Page 10 
municipalities are formed or the special charters and laws delimiting their authority. It may give to these specially created agencies such powers and call upon them to perform such functions as the Legislature may deem best.Brockenbrough v. Commissioners, supra.
If we give full faith and credit to this power of the Legislature over municipal government, it is clear that we must think in terms of agencies
rather than of agents when we speak of ancillary corporations which have been given charge of particular municipal public functions. The powers given to such corporations are direct and legislative, and not conferred by municipal resolution unless the statute should so direct. They are, in fact, agents of the law. In so far as constitutional restrictions are concerned, the General Assembly may distribute the functions of a municipality as it may deem best, the only limitation being its own sound judgment in creating a unified and efficient government. By the exercise of the same sound judgment and legislative discretion, it may, as it has attempted here to do, create a more or less autonomous agency, giving to the municipality only such control as it may consider advisable where the particular functions to be performed involve great detail and complexity, and demand close attention and skilled personnel. Perhaps in no other way could continuity and efficiency in the service be secured against political changes and petty directives.
In the type of corporation we have here control is ordinarily given, as it is here, by a representative directorate chosen by the governing bodies concerned, with such other provisions in the Act as will insure to the municipality the integrity of the operations and their continued employment in aid of the public purpose being promoted. Webb v. Port Commission,supra; Wells v. Housing Authority, supra.
The public statute, G.S., 63-4, permitting the three municipalities concerned to act jointly is not repealed or modified, or its authority in any way affected by the supplementary acts under which the purpose and policy of the public statute are carried out in the creation of a single Airport Authority to serve all three municipalities — obviously the only way in which it could be done.
The record itself constitutes a refutation of the theory that the agency thus created is an independent corporation, incapable of performing the public service required of it with respect to Greensboro and High Point, or that it is not committed by the pertinent statutes to supply the public need or convenience thus conceded to be a public purpose, and to the accomplishment of which the municipalities are permitted to spend public money. The airport itself is conveniently located between these populous cities, and they are the immediate beneficiaries of its operation, in so far as the convenience of their citizens is concerned, with respect to mail, freight and passenger service, in all of which the record shows an amazing *Page 11 
amount of "on" and "off" traffic flowing to and from these cities, and only remotely to others. In connection with the performance of these services Greensboro and High Point are given, with Guilford County, joint control of the directorate by proportional appointment of its members. In this situation the contention that the Airport Authority is not committed by law to this service and is not an agency of these two cities, and that their contributions are mere gifts to an independent corporation not charged with carrying out any public purpose or any municipal function in which they are directly interested, would hardly be accepted as sound.
In Briggs v. Raleigh, 195 N.C. 223, the only possible community or municipal benefit to the City of Raleigh discernible in the transaction whereby $75,000 to $100,000 was donated to the fair grounds enterprise, and approved by the Court, other than the satisfaction which comes from a benevolent action, was the fact that it increased the city's trade or put its inhabitants nearer the educational enterprise.
The appropriation which a municipality may make to an agency of this sort on the ground that it is a public purpose is not a loan and is not intended to be a lien on its assets. Webb v. Port Commission, supra; Wellsv. Housing Authority, supra; Mallard v. Housing Authority, supra; Briggs v.Raleigh, supra, and cases cited infra. Disposition of its property upon liquidation, which is not expected to occur, is a legislative care when the necessity arises.
It is pointed out that the Airport Act expressly declares the Authority to be an agent of Guilford County, but makes no such declaration as to Greensboro and High Point. The question of agency, however, must be determined from the entire Act and from the actual relation of the Airport Authority to the municipal functions of these two cities therein established, and the authority given the cities to deal with it, rather than from any declaration in the Act, especially one which is obviously not intended to be exclusive. Perusal of the Act leaves no doubt that the Legislature intended that the Airport Authority should perform for Greensboro and High Point all things necessary for the construction, maintenance and management of airport facilities, which they each might have done independently, but are by public statute (G.S., 63-4) permitted to do jointly. The Act, as we have seen, gives these two cities participation in the selection of members of the commission, or directors, and their replacement and succession — the right to be exercised by each city independently of any other authority, and makes frequent reference to the duties which the Airport Authority is to perform for these cities. In section 5 — and this should be decisive of the point raised — the Act, as amended, gives to Greensboro and High Point full authority to deal with the plaintiff Airport Authority in language which cannot be construed *Page 12 
otherwise than an acceptance and recognition of the challenged agency; indeed, more than that, it does in intent and in effect establish that relationship by direct authority to these municipalities to give to the agency material and substantial support. See section 5, supra.
In this connection the whole legislation on the subject must be considered in pari materia, and the provisions of chapter 206, Session Laws of 1945, cannot be ignored. This chapter gives complete and express recognition of the plaintiff Authority as the agency of Greensboro and High Point, as well as of Guilford County; and the authority is given each municipality to deal with it, and upon a plebiscite to lend credit and to issue bonds and raise money for its support. The statutes creating the agency (chapter 98, Public-Local Laws of 1941, and chapter 601, Session Laws of 1943) are cited in chapter 206, supra, and their authority is there expressly preserved. The significance of this later statute lies in the fact that it does not in itself create the agency, but recognizes its creation under the former statutes and the purpose of its creation, andauthorizes these municipalities to deal with it and give it aid. Since these cities are given authority to raise money by taxation and expend it in aid of plaintiff agency, the authority is adequate to appropriate for that purpose from surplus and uncommitted funds already on hand. Adams v.Durham, supra. It is true they are not proceeding under this statute to raise the funds, but that does not diminish the authority given to deal with the agency when they have the funds which may be applied.
Supplementing what has been said about the complete control of counties, cities and towns by the Legislature from which their powers are derived, we might refer to some of the "set-ups" which have met our approval and compare them with similar features of the act under review.
The Morehead Port Commission was created by chapter 75, Private Laws of 1933, and the act of creation was reviewed in Webb v. Port Commission,supra. Perusal of the Act — which is largely recapitulated in the case cited, will show that there is no control whatever of the Port Commission given to the governing body of Morehead City except that given through the appointment of members of the Commission; and yet the Court upheld the provision permitting financial aid to be given by Morehead City on the principle of its interest in the public purpose being served.
By chapter 271, Private Laws of 1899, a corporation known as "The Board of Water Commissioners of the City of Charlotte" was created to carry on that function for the city. Apart from the appointment of the members of this board by the Aldermen of Charlotte, there is not a vestige of control given to the city, unless the privilege of locating hydrants and paying for their installation and upkeep could be so *Page 13 
considered. Not only did it take away all the powers of the City Board of Aldermen in the premises and give them to the newly created corporation, but the statute provides that the acts of the Water Commissioners shall be deemed the acts of the municipality. The law was amended by chapter 196, Private Laws of 1903, and came under review here in Brockenbrough v.Charlotte, supra. Commenting on this law in the cited case, Justice Connor, speaking for the Court, says:
"It is clear that the Legislature may, in aid of municipal government,or for the purpose of discharging any municipal functions, or for any proper purpose, create municipal boards and confer upon them such powers and duties as in its judgment may seem best." (Italics ours.)
In other instances the Legislature has gone further and has completely committed municipal functions to a legislative board or corporation without any control of the governing body of the county, and yet the county is required to furnish the finances. Huneycutt v. Comrs., 182 N.C. 319,109 S.E. 4, dealt with a situation of that kind and found abundant support for its approval in the cases cited on p. 321.
The municipalities represented here have attempted to appropriate funds to a public purpose served by a statutory agency in whose appointment they participate and whose benefits are laid upon their threshold. The technical objections to the form of the statute do not outweigh the presence of that reality which the law and the decided cases have always sought as the determining factor — the relation of the municipality to the public purpose to which it lends its support — the practical satisfaction of the municipal need felt by its inhabitants. If the statute creating the Airport Authority has defects which merit legislative or judicial attention, they are not before us on this appeal.
Unquestionably the immediate future of civil aviation will bring to us results undreamed of; transportation of mail, passengers and freight will reach proportions hitherto thought impossible. Already we have in this method of travel and transportation a rival of all other means now employed; and an opportunity which these cities, amongst our largest and most prosperous, can no more afford to lose than we can afford to deny to them except upon cogent reasons.
In affirming Hesse v. Rath, 224 A.D. 344, 230 N.Y. Supp., 676,249 N.Y. 436, 164 N.E. 342, the Court, speaking through Cardozo, Ch.J., says:
"A city acts for city purposes when it builds a dock or a bridge or a subway. . . . Its purpose is not different when it builds an airport. . . . Aviation is today an established method of transportation. The future, even the near future, will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition. Chalcedon was called *Page 14 
the city of the blind, because its founders rejected the nobler site of Byzantium lying at their feet. The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness."
We have been cited no provision of the Constitution, and we find nothing in the statutes, which would justify us in raising a judicial bar to the appropriations which the municipalities have sought to make for the accomplishment of this widely recognized public purpose, or justify reversal of the judgment entered in the Superior Court. The defendants are acting in a ministerial capacity and are amenable to the writs demanded.
The judgment is
Affirmed.