J. BRUCE YOKLEY, HOWARD LOFLEN AND HOWARD SCOTT, AND OTHER TAXPAYERS v. MAYOR E. T. CLARK, COMMISSIONERS MAYNARD BEAMER, FLETCHER HARRIS, L. M. LAMM, CHARLES LOWRY, MARTIN A. THOMAS AND CLERK J. C. HILL OF THE TOWN OF MOUNT AIRY, N. C., AND COMMISSIONERS HOWARD HARDY, CHAIRMAN,

YOKLEY v. CLARK.

HOWARD FOY AND MARION WHITNER AND CLERK PAUL D. MELTON OF SURRY COUNTY, NORTH CAROLINA, AND JOHN BANNER, JR., CHAIRMAN, HENRY R. ROWE, TREASURER, RAYMOND SMITH, JR., VICE PRESIDENT, HOWARD O. WOLTZ, JR., SECRETARY, AND DR. LOUIS SPILLMAN, OF THE MOUNT AIRY-SURRY COUNTY AIRPORT COMMISSION.

(Filed 12 June 1964.)

**1. Taxation § 6—**

A contract between a county and one of its municipalities to contribute funds for the construction and operation of an airport, without submitting the question to a vote, is invalid, even if the contribution of funds for the construction of the airport is made from nontax revenue, since the contract is indivisible and the pledging of future operating funds is unlimited, and, even if limited to nontax revenue, would be unconstitutional. Constitution of North Carolina, Art. VII, § 6. Whether the proceeds of sale by a county of lands purchased with tax funds become surplus funds derived from a source other than taxation, *quaere?*

**2. Municipal Corporations § 37—**

Water and sewer receipts of a municipality may not be treated by it as surplus funds until all expenses of operating, managing, maintaining, and extending its water and sewer facilities, as well as the interest and principal required to be paid during the next succeeding year on bonds issued for such enterprises, have been paid. G.S. 160-397.

**3. Taxation § 6—**

Intangible tax receipts of a county may not be treated by it as nontax revenue which it may spend for an unnecessary purpose without a vote, since the State levies and collects such taxes for and on behalf of its political subdivisions. G.S. 105-198.

APPEAL by plaintiffs from *Gwyn, J.,* October, 1963 Civil Session, SURRY Superior Court.

The plaintiffs, who are residents, property owners, and taxpayers of the Town of Mount Airy and County of Surry, instituted this civil action to restrain the Town and County from appropriating and expending public funds of the Town and County in constructing and maintaining an airport outside the Town of Mount Airy, Surry County. The Mount Airy-Surry County Airport Authority was made a party defendant. Judge Johnston, upon application of the plaintiffs, issued a temporary restraining order pending hearing. At the hearing, Judge Gwyn modified the order but permitted the expenditures with some limitations. Plaintiffs appealed.

*J. N. Freeman, Womble, Carlyle, Sandridge & Rice, by I. E. Carlyle and Grady Barnhill, Jr., for plaintiff appellants.*

*John C. W. Gardner, of Barber & Gardner for defendant Town of Mount Airy, appellee.*

*Fred Folger, Jr., of Folger & Folger, for defendant County of Surry, appellee.*

*Thomas M. Faw, of Woltz & Faw, for defendant Mount Airy-Surry County Airport Authority, appellee.*

HIGGINS, J. According to the Census of 1960, Surry County had a population of 48,205. The Town of Mount Airy had a population of 7,055. For the year 1963 a total of ten airplanes were listed for taxes in Surry County. An air strip with a topsoil runway 1,800 feet long (not useable in bad weather) is privately owned and privately maintained near Mount Airy. The nearest modern airfield is at Winston-Salem, 38 miles distant.

On March 7, 1963, the proper governing authorities of Surry County and of the Town of Mount Airy entered into a written contract pursuant to Chapter 63, General Statutes, establishing the Town of Mount Airy-Surry County Airport Commission. The contract empowered the Commission "to acquire by purchase or eminent domain such real estate or personal property which shall be required for the operation of the Airport Authority . . . Title . . . shall vest in said authority for the purpose of operating, constructing, maintaining, equipping, and regulating the Airport Authority and all Airport facilities acquired by the Authority."

> "That the Town of Mount Airy agrees to appropriate from its funds the sum of $37,500.00 and Surry County agrees to appropriate the sum of $25,000.00 from its general funds to be used for the initial acquisition and construction of a landing strip and other required facilities, such contributions to be supplemented by donations from interested private individuals and matched by the Federal Government. That after the establishment of the landing strip and other required facilities, revenues of the Authority shall be devoted to the expenses of operation and maintenance of the Airport Authority and the further expenses of operation and maintenance shall be on the basis of sixty (60%) per cent contributions by the Town of Mount Airy and forty (40%) per cent contributions by the County of Surry. . . .
>
> "After the construction of the Airport facilities by the Mount Airy-Surry County Airport Authority, the Airport Commission shall submit to Surry County and the Town of Mount Airy for approval and consideration annual budget estimates of anticipated expenditures required for the operation of the Commission. If and in the event the expenditures of the Commission exceed budgeted expenditures, the Airport Commission shall apply to the parties to this Agreement for approval of all additional expenditures."

The Town of Mount Airy, in its first further defense, recites as its authority to finance the original contract, the following:

"That thereafter, the Town Board of Commissioners of the Town of Mount Airy, acting upon the advice of its Attorneys and upon the advice of the Attorney General of North Carolina, budgeted for payment during the 1963-1964 fiscal year the sum of $37,500.00 to the Mount Airy-Surry County Airport Authority. That $25,-000.00 of this amount is payable from the sale of the old water-shed property; $9,338.50 payable from water and sewer surplus and $3,111.50 from water revenues. That all of the said sums are nontax revenues within the meaning of Chapter VII, Section 7, of the Constitution of the State of North Carolina."

The Board of Commissioners of Surry County, in its 1963-1964 budget, included the sum of $25,000.00 for the Airport Authority, (one member of the Board opposed this grant). The budget carried this notation:

"(T)hat it is specifically directed that the $25,000.00 appropriated for use by the Mt. Airy-Surry County Airport Authority be paid out of any non Ad Valorem tax revenues available such beer tax and wine tax revenues or intangibles tax revenue due the General Fund according to the following schedules:"

Judge Gwyn approved the Town's appropriation of $25,000.00 from the proceeds of a sale of a part of the Town's watershed lands. The parties stipulated these lands were paid for by tax money. Judge Gwyn also approved the Town's appropriation of $9,338.50 from its water and sewer receipts, and $3,111.50 from water revenues which the court found to be surplus funds. The court likewise approved the appropriation of $25,000.00 by Surry County from its general fund since the wine, beer and intangibles taxes had been paid into that fund by the State. The court held the foregoing appropriations were from surplus funds, hence valid. These findings and conclusions were challenged by exceptions and assignments of error.

The contract here involved obligates Mount Airy and Surry County to make contributions in the respective sums of $37,500.00 and $25,-000.00 to the construction of the airport. It likewise provides "that revenues of the Authority shall be devoted to the expenses of operation and maintenance of the airport authority, and the further expenses of operation and maintenance shall be on the basis of sixty per cent contribution by the Town of Mount Airy and forty per cent contribution by the County of Surry . . . If and in the event the expenditures

of the Commission exceed budgeted expenditures the Airport Commission shall apply to the parties to this agreement for approval of all additional expenditures."

The contributions to the construction of the airport are limited. The obligation to underwrite costs of operation are unlimited either as to time, amount, or source of funds. Costs of operating an airport include maintenance of runways, hangars, repair facilities, observation and directional tower, communications, lights, wind and weather measuring and testing devices, in addition to the personnel necessary to man them. Operating receipts from the ten planes now in Surry County, and any likely additions, in all probability will fall far short of meeting operating expenses. The contract requires the Town and County to finance all additional costs of operation. To that extent the contract pledges the faith and credit of the town and County. The undertaking and pledge are in violation of Article VII, Section 6, of the State Constitution in the absence of approval "by a majority of those who shall vote therein in any election held for such purpose." *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271. "The referendum is definitely recognized as an instrument of democratic government, widely used, and of great value. Where it is adopted in the Constitution it is entitled to respect and should not be abridged by withdrawal from its processes of the subjects with which it was intended to deal." *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702.

The contract to build, and to operate the airport is indivisible. The judge is without power to eliminate the objections by confining the operating expenses to nontax receipts. In the first place, the parties do not so limit their commitment. In the second place, the Constitution forbids contracting the debt or pledging the credit of the Town and County without a vote. The making of the pledge for future fulfillment is unauthorized. The method by which payment was intended, whether by taxation or otherwise, is immaterial, if for an unnecessary purpose.

In addition to the constitutional prohibition there are other serious questions involved. The plaintiffs' appeal challenges the court's conclusion that money received from the sale of the watershed lands (paid for by taxes) becomes surplus funds derived from a source other than taxation. Research fails to disclose a case in which the question has been directly presented. In the majority of the cases the question is removed from controversy by stipulation or admission. For example, *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803. However, notwithstanding this stipulation, Barnhill, J., later C. J., in his opinion concurring in part and dissenting in part, had this to say on the sub-

ject: "Ordinarily cities obtain funds with which to buy property through taxation. Where tax money is used to purchase property and the property is sold, the money received therefrom is in a legal sense derived from taxation. The conversion and reconversion do not change its essential nature as tax money." Justice Barnhill held the view that the stipulation was not a stipulation of fact, but a conclusion of law.

The plaintiffs challenge the finding that Mount Airy has on hand surplus funds from water and sewer receipts which the Town may properly appropriate for construction of the airport. The record shows the Town has in its treasury receipts from water and sewer revenues in an amount sufficient to pay this appropriation. However, the record likewise shows that the Town is issuing new bonds in the sum of $52,-000.00 for the extension and upkeep of its water and sewer lines. The record further shows the Town is issuing refunding bonds in the amount of $56,000.00 to redeem water and sewer bonds maturing on or prior to June 1, 1964. The statute, G.S. 160-397, earmarks the income from municipally owned revenue producing enterprises, first to the payment of all expenses of operating, managing, maintaining, repairing, enlarging, and extending such enterprises; then to the payment of interest payable in the next succeeding year on bonds issued for such enterprises; and, finally, to the payment of amount necessary to be raised by tax in such succeeding year for the payment of the principal of said bonds. Hence, there is no surplus from water and sewer bonds until the foregoing payments are provided for.

Judge John J. Parker, in the case of *George v. Asheville*, 103 A.L.R. 568, had this to say in interpreting the above statute: "In other words, the governing body of the city may make such use of the gross revenues of the system as . . . they may think wise for maintaining, repairing, enlarging or extending the system . . . but they may not divert its revenues to other purposes so as to dissipate the net revenues which the law requires to be applied on principal and interest of waterworks bonds." Consequently, the court's finding that the Town had on hand surplus water and sewer revenues is not supported by the evidence.

The County may not treat intangibles tax receipts as surplus funds, notwithstanding the fact the State collects the tax and makes distribution to the counties and towns. G.S. 105-198 provides: "(T)axes so levied for the benefit of the political subdivisions of the State are levied for and on behalf of said political subdivisions . . . to the same extent and manner as if . . . made by the governing authorities of said subdivisions . . ." Hence, intangibles taxes may not be used by

Surry County other than as tax funds. The prohibition extends not only to ad valorem tax revenues, but to all tax revenues. *Dennis v. Raleigh,* 253 N.C. 400, 116 S.E. 2d 923.

Opportunities to spend matching funds from the Federal Government and from other sources without voter approval are attractive to many county and city governing authorities. But, if the proposed appropriation is for an unnecessary public purpose, (as in this case) the town and county officials are without authority either to use tax money or to incur a debt in furtherance of the project. We conclude, therefore, the evidence is insufficient to support the findings and conclusions necessary to sustain the validity of the contract here involved. The judgment of the Superior Court is reversed. The cause is remanded for the entry of an order enjoining the enforcement of the contract. The defendants will pay the costs of the appeal.

Reversed and remanded.