VANCE COUNTY, PLAINTIFF, v. THOMAS S. ROYSTER AND WIFE, CAROLINE H. ROYSTER, DEFENDANTS.

(Filed 24 July, 1967.)

**1. Constitutional Law § 21—**

Private property may not be appropriated by the State, even upon the payment of just compensation, except by the exercise of the power of eminent domain in accordance with lawful procedure.

**2. Eminent Domain § 3—**

Private property may be taken by the exercise of the power of eminent domain only when the taking is for a public use; what is a public use is a judicial question, but if the use be public the courts will not interfere with the legislative or administrative determination that the taking of particular property is necessary for the successful operation of the proposed project, or prevent the taking on the ground that another site would be preferable.

**3. Same—**

Acquisition of land for, and the construction and operation of, an airport for use by the public is a purpose for which a city or a county, or both, may acquire land by condemnation, and the fact that at the time of the taking there are no commitments from commercial air lines and the immediate prospect is for use only by a small number of private planes, is irrelevant, there being no suggestion that the airport would not be available and eventually used as a public facility.

**4. Eminent Domain § 1—**

Private property may not be taken by eminent domain even for a public purpose when such purpose, under the circumstances of the particular case, as a matter of law cannot be accomplished.

**5. Taxation § 6—**

The operation and maintenance of a county-municipal airport is not a necessary expense of the city or county.

**6. Same—**

The constitutional provision prohibiting a county or city from contracting a debt or levying a tax for a purpose other than a necessary purpose without a vote of the people is not an impediment to economic progress but merely relegates to the people and not to their elected representatives the power to determine whether a particular project should be undertaken.

**7. Same—**

Even though an agreement between a city and a county and the Federal Government be construed to obligate the city and county to spend only non-tax revenue for the maintenance and operation of an airport, the county and city are without authority to incur such debt without the approval of the voters, since the constitutional prohibition against the incurrence of a debt for other than a necessary expense without a vote applies regardless of whether the future obligation constitutes a charge on funds derived from taxation or otherwise.

APPEALS by plaintiff and defendants from *Johnson, J.,* at the 7 November 1966 Civil Session of VANCE.

This is a proceeding instituted by Vance County to take by the power of eminent domain the fee simple estate in 3.3 acres of land owned by the defendants. The petition alleges that the county proposes to use the property as a portion of a public commercial airport to be constructed by the county, in cooperation with the City of

Henderson, the Henderson Township Airport Authority, and the Federal Aviation Agency. The defendants in their answer allege that the proposed taking of their land is unlawful both because the taking is for a private, not a public use and because the agreement which the plaintiff has made with the United States Government to operate and maintain the proposed airport is in violation of Article 7, § 6, of the Constitution of North Carolina, the agreement not having been submitted to a vote of the people.

The clerk adjudged that the plaintiff has the power to condemn the land for the proposed use and appointed commissioners to appraise the land and fix the defendants' damages. The commissioners filed their report, which the clerk affirmed. The defendants appealed to the superior court.

Evidence relating to issues other than damages for the taking was heard by the judge without a jury. Upon these issues, the court made findings of fact and concluded that the taking by the county was for a public use and within its authority. Thereupon, the issue of damages was tried before a jury, which found the defendants' damages to be $5,000. Judgment was entered accordingly. Both parties appealed, but the county moved in the Supreme Court for permission to withdraw its appeal, leaving for determination only the appeal by the defendants from the judgment sustaining the power of the county to take the land.

The findings of fact made by the superior court include the following:

"(5)    That the use for which the property of the respondents is to be taken is as a portion of a site for the construction, operation and maintenance of a public commercial airport in Vance County, North Carolina.

"(6)    That the proposed airport in Vance County is to be constructed in conformity with specifications of the Federal Aviation Agency of the United States of America.

"(7)    That the 3.3 acre tract of land described in the petition is necessary and required for the construction, operation and maintenance of an airport in Vance County that will conform to the specifications of the Federal Aviation Agency.

*        *        *

"(11)    That on or about June 2, 1966, the petitioner made an application for federal funds for the construction of the proposed airport through the Federal Aviation Agency of the United States of America and on or about June 27th, 1966, entered into

a grant agreement with the Federal Aviation Agency for and on behalf of the United States of America.

"(12)  That there are seven private aircraft operated and maintained in Vance County.

"(13)  That Vance County had a total population according to the official census records for 1960 of 32,002.

"(14)  That all sums appropriated by Vance County and the City of Henderson, to date, for the airport project are from non-tax funds.

"(15)  That there has been no referendum or vote of the people of Vance County in regard to the construction, operation or maintenance of an airport."

The defendants do not except to any of these findings of fact. They assign as error the refusal of the court to grant their motion to dismiss the proceedings at the close of the petitioner's evidence and their like motion at the close of all of the evidence. They also assign as error certain rulings of the court sustaining objection to evidence offered by them.

Evidence offered by the county tended to show:

The county commissioners and the city council approved a plan for matching funds with the federal government for the building of an airport facility in Vance County. The site selected was a tract of land then owned by the federal government which it proposed to lease for the construction and operation thereon of the proposed airport. In order to comply with the requirements of the Federal Aviation Agency, it is necessary that the 3.3 acres belonging to the defendants be acquired in order to remove the trees thereon so as to permit the safe approach and departure of airplanes from the airport. The county commissioners allocated in the budget a total of $49,000 from non-tax funds (ABC Store revenues) for the development of the airport.

The county board also authorized the execution of a "grant agreement" with the Federal Aviation Agency so as to obtain federal funds for the development of the airport. This agreement was executed on behalf of the county.

The Henderson Township Airport Authority (actually, the authority, the city and the county jointly) entered into a lease with the federal government (Secretary of the Army) whereby the site of the proposed airport, adjoining the land now proposed to be taken from the defendants, is located. The term of the lease is 25 years and the annual rental is $1,250.

No question relating to the establishment, operation or maintenance of the proposed airport was ever submitted to a vote of the people.

The Henderson Township Airport Authority has no indication from any commercial airline that it will use the proposed airport. There is no public airport in the county. There are seven privately owned airplanes in the county. No study has been made to determine the extent to which the proposed airport would actually be used. The chairman of the Airport Authority anticipates that the construction and operation of the proposed airport would substantially increase the use of the recreational facilities at Kerr Lake and thus benefit the economy of the county.

The defendants offered in evidence the "project application" by the city and county to the federal agency, the "grant agreement" between the United States and the city and county, and the lease from the Secretary of the Army to the city, the county and the Airport Authority.

By the "grant agreement" the Federal Aviation Agency, on behalf of the United States Government, agreed to pay 50% of the "allowable cost" of the proposed airport project, not to exceed a specified amount. The city and county thereby agreed to "carry out and complete the project without undue delay," and to "operate and maintain the Airport as Provided in the Project Application." Other undertakings by the city and county were also included in the agreement but these are not material to the determination of the present appeal. The "grant agreement" then provides:

> "11. In view of the provision appearing in Paragraph 6, Possible Disabilities, Part II — Representations of the Project Application, it is understood and agreed that the obligations under Part III — Sponsor's [the city and county] Assurances of the Project Application can and will be met by the Sponsor through the use of funds derived from sources other than taxation, both parties having determined that such necessary funds will be available as needed for these purposes."

Paragraph 6, Part II, of the "project application," so mentioned in the "grant agreement," reads:

> "6. *Possible Disabilities.* — There are no facts or circumstances * * * which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of Parts III and IV of the Project Application, either by limiting its legal or financial ability or otherwise, except as follows:

"Under the restrictions of the Constitution and Laws of North Carolina, the Sponsor cannot pledge present or future tax revenues to assure its compliance with the assurances of Part III Sponsor's Assurances of the Project Application. Each possible disability is negated by Sponsor's having non-tax funds available to operate and maintain the airport as indicated by the Certificates executed by Sponsor's Auditor and Attorney."

Part III of the "project application," so mentioned in the "grant agreement," contains the following covenants by the "Sponsor" (the city and county), which covenants are to remain in full force and effect throughout the life of the project:

"2. The Sponsor will operate the Airport as such for the use and benefit of the public. * * *

"6. The Sponsor will operate and maintain in a safe and serviceable condition the Airport and all facilities thereon and connected therewith which are necessary to serve the aeronautical users of the Airport * * *

"9. Whenever so requested by the FAA, the Sponsor will furnish without cost to the Federal Government, for construction, operation and maintenance of facilities for air traffic control activities, or weather reporting activities and communication activities related to air traffic control, such areas of land or water, or estate therein, or rights in buildings of the Sponsor as the FAA may consider necessary or desirable for construction at Federal expense of space or facilities for such purposes. * * *"

Attached to and made part of the "project application" is a certificate of the county auditor certifying that $30,500 of non-tax funds had then been committed by the county commissioners for this project, and further stating:

"Further, I certify that an estimate on funds that will be available annually for commitment to meet the sponsor's obligations and to comply with the assurances contained in the Project Application is the estimated amount of $2,000.00 for maintenance and operation of the airport and lease payments.

"The sources and amounts of nontax revenues available to the County of Vance and a portion of which will be made available to the Henderson Township Airport Authority for the

above airport project and for future maintenance and operation of the airport are as follows:

| "ABC Store | $100,000.00 |
| Court Fees | 37,000.00 |
| Non-Tax Surplus | 20,000.00 |
| | $157,000.00" |

The lease from the Secretary of the Army to the city, the county, and the Airport Authority, as joint lessees, imposes upon the lessees, jointly, the obligation to pay the rent in the amount of $1,250 per year for the property to be used as the airport proper. It contains no provision limiting the liability of the county for such rent to non-tax revenues. It further obligates the lessees, jointly, to reimburse the United States for expenditures by it, upon the termination of the lease, in restoring the property "to a condition satisfactory to the District Engineer." This obligation is likewise not limited to non-tax revenues. The term of the lease is 25 years. It provides that the "lessee" may relinquish it at any time by giving 30 days' notice in writing to the Secretary of the Army, but it does not state that notice by the county alone will have that effect.

*Sterling G. Gilliam for petitioner appellant.*
*Broughton & Broughton for respondent appellees.*

LAKE, J. The motion of the petitioner for permission to withdraw its appeal is allowed.

Upon the appeal of the respondents, the ultimate question for decision is not whether it would be beneficial to the economy of Vance County and the City of Henderson for an airport to be constructed at the proposed site. The question is whether the respondents' property can be taken from them, without their consent, for the purpose of constructing an airport as proposed by the county. It is not a light thing to take property from the owners against their will, even though they be paid therefor the full value of it in money. Such taking can be accomplished only through the exercise of the sovereign power of the State through lawful procedures for a public use which the taker is authorized by the sovereign to make of the property.

Private property can be taken by exercise of the power of eminent domain only where the taking is for a public use. *Highway Commission v. Batts,* 265 N.C. 346, 144 S.E. 2d 126; *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600, 169 A.L.R. 569. In *Highway Commission v. Thornton, post* 227, it was decided that, whether a

proposed use of property is a "public use," such as will justify the taking of property without the consent of the owner, is a judicial question and is to be determined by considering whether the public will use the property, not by considering the benefits to the economy from a proposed private use of it.

If the taking is for a "public use," the economic feasibility of the proposed use is for the legislative or administrative body to determine. With that determination the courts may not interfere, except upon a clear showing of abuse of discretion such as to make the taking of the property an arbitrary and capricious interference with the right of the owner thereto. *Yarborough v. Park Commission,* 196 N.C. 284, 145 S.E. 563; *Jeffress v. Greenville,* 154 N.C. 490, 70 S.E. 919; 29A C.J.S., Eminent Domain, § 89(2). Thus, in the absence of a showing of bad faith, which is not suggested in the present case, the courts will not interfere with the legislative or administrative determination that the taking of the particular property is necessary for the successful operation of the proposed project or prevent the taking on the ground that another site would be better, cheaper or otherwise preferable. 29A C.J.S., Eminent Domain, § 90.

Nearly forty years ago, when flight across the ocean was still a marvel and commercial air travel and transportation were in their infancy, the Legislature of this State authorized cities and counties jointly to acquire, construct and operate airports and to exercise the power of eminent domain to acquire land for that purpose. G.S. 63-4, 63-5. The procedure followed in the present case is that prescribed by the statute. It is clearly established by the decisions of this Court that the acquisition of land for, and the construction and operation of, an airport for use by the public is a purpose for which a city or a county or both may appropriate and expend public funds and for which it or they may acquire land by the exercise of the power of eminent domain. *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803; *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211.

In a taking of land for the construction of an airport, as in the case of a taking for the construction of a road, if the taking is, in reality, for the purpose of making the property available for use by the public, it is immaterial that, in the immediate future, only a small segment of the public will be likely to make actual use of it. See: *Charlotte v. Heath, supra; Cozard v. Hardwood Co.,* 139 N.C. 283, 51 S.E. 932. In *Turner v. Reidsville, supra,* the argument, similar to one of the contentions of the respondents here, was made that land could not be acquired by eminent domain for construction of an airport because "no public airline now makes Reidsville a stopping place for air traffic, nor are there definite assurances for the

future, or apparent demand for facilities for public or private aircraft service," and so, it was argued, an airport for Reidsville was neither needed in the public interest nor prospectively advantageous to the citizens or industries, and its construction and maintenance would be a waste of public funds. This Court did not find that argument persuasive then and we do not find it so now, since the wisdom of the proposed construction and operation is not for us to determine or consider. The small number of privately owned airplanes, presently kept in Vance County at private landing strips, and the absence of commitments from commercial airlines to use the proposed airport do not determine the nature of the use to be made of the proposed facility. There is nothing in the record to suggest that it will not be available for use by any airplane, whether owned by a resident of Vance County or otherwise, desiring to land upon it, nor is there anything in the record to support a finding that if it is constructed it will not be used eventually by others than those who now own airplanes regularly kept in Vance County. Thus, the present record does not present a situation comparable to that found in *Highway Commission v. Batts, supra.*

We, therefore, conclude that the city and county propose to construct and operate the airport for public use. The proposed taking of the land of the respondents so as to provide for airplanes an approach to the runway of the airport free from trees and structures of considerable height is reasonably incidental to the construction of such an airport. Consequently, the proposed taking of this property is for a public use and is within the authority of the petitioner, unless the proposed construction and operation is otherwise beyond the authority of the petitioner.

For the petitioner to take the land of the respondents, without their consent, for a use incidental to a proposed airport, which airport the petitioner may not lawfully construct and operate, would be a vain and utterly useless deprivation of the respondents' rights in their property. Such an arbitrary, capricious taking of their land would be a violation of Article I, § 17, of the Constitution of this State. The land of a person may not be taken, without his consent, when the purpose, which would otherwise authorize the taking, cannot be accomplished as a matter of law.

It is clear upon the record before us that the proposed taking of the land of the respondents is to provide a safe approach to an airport which is to be constructed pursuant to the lease of the land for the airport proper, the "grant agreement" and the "project application," and not otherwise. If the petitioner does not have authority under the law to construct and operate the contemplated airport

pursuant to the provisions of these documents, the taking of the land of the respondents so as to provide a safe approach to such airport is beyond the authority of the petitioner. We, therefore, turn to the examination of the petitioner's undertaking in these documents and to the consideration of the authority of the petitioner to enter into such undertaking.

The lease expressly provides that the obligations therein undertaken are the joint obligations of the county, the city, and the Airport Authority. Thus, in the lease the county binds itself to pay rent throughout the 25 year term of the lease. The provision that the lease may be terminated earlier by the three joint lessees does not provide the county alone with a means of escape from this obligation if its joint obligors do not concur in its desire to terminate the lease. The full credit of the county is pledged for the payment of the agreed rent.

The "grant agreement" contains an undertaking by the county and by the city to maintain and operate the airport during the continuation of the lease. There is evidence in the record that the initial operation and the expense for maintenance will be relatively modest, but the obligation is not limited to operations and maintenance presently adequate to satisfy the Federal Aviation Agency. While the amount of the undertaking is not determinative, it is appropriate to recall at this point the following observation of Higgins, J., speaking for this Court in *Yokley v. Clark*, 262 N.C. 218, 136 S.E. 2d 564:

> "Costs of operating an airport include maintenance of runways, hangars, repair facilities, observation and directional tower, communications, lights, wind and weather measuring and testing devices, in addition to personnel necessary to man them."

The "grant agreement" also provides that the county, city and airport authority will complete the construction of the airport. The amount to be contributed by the federal agency to the construction cost is limited to a specified maximum. The county's liability is not so limited.

Article VII, § 6, of the Constitution of North Carolina provides:

> "*No debt or loan except by a majority of voters.* — No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

This provision of our State Constitution, like the provision of Article V, § 4, imposing a limitation upon the power of the State, counties and municipalities to contract debts without a vote of the people, does not deprive the county of any power to contract a debt. It merely declares who shall have the power of decision. The Constitution gives to the people that power by requiring their duly elected representatives to submit the question to them for their approval before the indebtedness is assumed. When the Constitution puts into, or leaves in, the hands of the people a checkrein upon the discretion of their duly elected officials, it is not a true Liberalism which would give to the constitutional provision an interpretation such as to loosen the hold of the people upon the checkrein. The Constitution proceeds upon the theory that if it is, indeed, wise to contract an indebtedness for an unnecessary county or city expense, the people of the county or city will recognize this when the facts are presented to them and will approve the assumption of the obligation and, if they do not approve it, it ought not to be undertaken at their expense even though the county or city commissioners, and the courts as well, deem it wise to do so. It is appropriate to refresh our recollection of these comments by Seawell, J., speaking for the Court in *Purser v. Ledbetter*, 227 N.C. 1, 40 S.E. 2d 702:

> "We are not inadvertent to the uses of a written Constitution and the arguments that have been addressed to the propriety of a liberal construction so that it may aid, rather than retard, the march of progress. Concededly, from its nature and purpose, a constitution is intended to be a forward-looking document, expressing the basic principles on which government is founded; and where its terms will permit, is to be credited with a certain flexibility which will adapt it to the continuous growth and progress of the State [citations omitted]. But when the Constitution provides how orderly progress may be fostered and advanced, and the process involves political rights reserved or expressly secured to the people, the courts will be careful not to encroach on that prerogative, will be inclined to find in the provision itself the liberality and flexibility which the Constitution intends. * * *
>
> "This decision closes no gate to the people of Charlotte, or of any other municipality, if they have the will to open it. The Constitution makes them trustees of their own progress. It neither drives them or stays them, but leaves them with the responsibility for the wisdom of the venture."

It is not for the court to determine the wisdom of a decision to contract a debt for a county or a city, but it is the duty of the

court to determine whether the proposed indebtedness is for a "necessary expense" within the meaning of the above provision of the Constitution. *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668, 113 A.L.R. 1195; *Starmount Co. v. Hamilton Lakes,* 205 N.C. 514, 171 S.E. 909; *Storm v. Wrightsville Beach,* 189 N.C. 679, 128 S.E. 17. Pursuant to this authority and duty, this Court has determined that the construction of a public airport is not a "necessary expense" in that sense. *Airport Authority v. Johnson, supra; Sing v. Charlotte, supra.* Thus, a county or city may not contract a debt or pledge its faith for the construction or operation of such an airport without first submitting the question to a vote of the people of such county or city.

In the present case, the "grant agreement," unlike the lease, contains by reference to the "project application" the express recognition that, since the agreement has not been approved by a vote of the people, the revenues of the county or city derived from taxation cannot be used lawfully for paying the expenses of maintaining and operating the airport. Assuming, without deciding, that this recognition of the foregoing provision of the Constitution is sufficient to limit the liability of the county and city, and the right of the Federal Aviation Agency, to non-tax funds for the payment of these expenses, the "grant agreement" is not thereby insulated against the power of the constitutional provision.

The Constitution not only forbids the levying and expenditure of a tax for a purpose other than a "necessary expense," it also forbids the contracting of any debt for such purpose without first submitting the matter to a vote of the people.

This Court has held that bonds of a city, issued for the purpose of acquiring revenue producing property and which expressly provide that only the revenues produced by such property shall be used for or subject to demand for payment of such bonds, are not a "debt" of the city within the meaning of the above quoted provision of the Constitution. *Keeter v. Lake Lure,* 264 N.C. 252, 141 S.E. 2d 634; *Britt v. Wilmington,* 236 N.C. 446, 73 S.E. 2d 289; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; *Brockenbrough v. Commissioners,* 134 N.C. 1, 46 S.E. 28. These decisions do not, however, extend to the "grant agreement" in the present case. The "grant agreement," giving to the restrictive provision therein the broadest possible effect, leaves subject to a demand for the construction and for the operation and maintenance of the proposed airport every non-tax revenue of the county, including the revenues from the operation of the Alcoholic Beverage Control Stores, court costs and all other revenues paid into the county's general fund. As this Court

said in *Yokley v. Clark, supra,* with reference to an undertaking by a county and a city to. maintain and operate an airport:

"[T]he Constitution forbids contracting the debt or pledging the credit of the Town and County without a vote. The making of the pledge for future fulfillment is unauthorized. The method by which payment was intended, whether by taxation or otherwise, is immaterial, if for an unnecessary purpose * * *

"Opportunities to spend matching funds from the Federal Government and from other sources without voter approval are attractive to many county and city governing authorities. But, if the proposed appropriation is for an unnecessary public purpose, (as in this case) the town and county officials are without authority either to use tax money or to incur a debt in furtherance of the project."

Neither the lease nor the "grant agreement" having been approved by a vote of the people of the county, the county commissioners were not authorized to enter into either of these contractual obligations on behalf of the county. Consequently, the construction, operation and maintenance of the proposed airport by the county and city are not presently authorized and the taking of the land of the respondents for a use incidental to the operation of it is not authorized. The motion of the respondents, at the close of all the evidence, to dismiss these condemnation proceedings should have been granted.

Reversed.