UNITED STATES of America, Plaintiff,

v.

30.60 ACRES OF LAND, etc., et al., Defendants.

No. 80–133–CIV–7.

United States District Court, E. D. North Carolina, Wilmington Division.

Dec. 10, 1981.

**34**

James L. Blackburn, U. S. Atty., Raleigh, N. C., for plaintiff.

William L. Stocks, Greensboro, N. C., for defendants.

### ORDER

DUPREE, Chief Judge.

In this condemnation action the defendant landowner challenges the authority of the United States to take two parcels of land on Bird Island in Brunswick County, North Carolina, for use in connection with the Little River Inlet Navigation Project, a project of the Army Corps of Engineers designed to stabilize the inlet to improve navigation. As raised in the parties' cross-motions for summary judgment, the challenge to the government's authority to take the property presents two questions, one requiring construction of a federal statute and the other requiring construction of a provision of the North Carolina Constitution. The motions are ripe for disposition.

Congress has given the United States Army Corps of Engineers blanket authority "to construct, operate, and maintain any water resource development project" for purposes, *inter alia*, of improving navigation, subject to two limitations. First, the "estimated Federal first cost of constructing such project" must be less than $15,000,-000. Second, the project must be "approved by resolutions adopted by the Committees on Public Works of the Senate and House of Representatives, respectively." 42 U.S.C. § 1962d–5(a). It is undisputed that in 1972 the estimated Federal first cost of the Little River Inlet Project was $6,271,-000.00 and that the project was approved at this estimated cost by resolutions of the House and Senate Committees on Public Works on October 12, 1972. It is also undisputed that in September, 1981, the "Reasonable Construction Contract Price" of the project was $18,200,000. The landowner asserts that because the estimated cost is now over $15,000,000.00, the project is outside the blanket authorization of 42 U.S.C. § 1962d–5 and must be specifically approved by act of Congress. Accordingly, it is contended that the government is presently without authority to condemn the land. Resolution of this question turns on the meaning of "estimated Federal first cost" as used in Section 1962d–5.

██ The government contends that the appropriate figure is that submitted to Congress by the Corps of Engineers at the time of project authorization, regardless of future effects of inflation.[1] In support of this contention the government argues that a contrary holding would frequently result in completed or nearly completed projects being declared unauthorized because actual cost exceeded the $15,000,000.00 limit, regardless of the original estimate. The government further points out that Congress appropriated over four million dollars for the Little River Inlet Project on October 1, 1980, with full knowledge that construction cost estimates now exceed fifteen million dollars.

---

1. It is not contended that the increase in estimated cost since 1972 is due to changes in the project, so the court assumes that the project is presently being constructed as proposed in 1972, with the cost increase being the result solely of inflation.

The landowner contends that the 1972 cost estimates, and therefore the 1972 Congressional committee resolutions, are irrelevant, and that the only issue is the estimated cost in December, 1980, when the complaint in condemnation was filed. Because the estimated cost of the project in December, 1980 exceeded fifteen million dollars, it is contended that the government is without authority to undertake the Little River Project and therefore is without authority to take the property in question.

Neither party has presented case authority on point and none has been found by the court. Common sense, however, weighs heavily in favor of the government. Should the landowner's position be accepted, much of the government's fiscal planning and letting of contracts would be thrown into complete disarray as the actual cost of projects unexpectedly exceeded the fifteen million dollar limit at some time during construction. Congress did not, as it could have, limit the authority of the Corps to undertake projects to those with *actual* costs of less than fifteen million dollars. Some fixed figure must be chosen as the "estimated Federal first cost" of the project and the most logical choice is the estimate upon which the Congressional committees rely in making their determination of whether to authorize the project.

The court is aware that this result leaves the Corps great latitude to seek and obtain early authorization of projects while the estimate is below the ceiling, even knowing that the actual cost may eventually exceed that ceiling. Here, for example, there has been an eight-year hiatus between Congressional authorization and the actual taking, during which cost estimates have tripled. Nevertheless, Congress always retains control over the project since money must be appropriated for it.[2] For these reasons, the court concludes that the Corps is presently authorized to undertake the Little River Inlet Project pursuant to 42 U.S.C. § 1962d–5.

In connection with the project, Brunswick County has entered into an agreement with the United States pursuant to which the county agreed, *inter alia*, to provide the land and easements necessary for the project, to indemnify the government from certain damages that may result from construction and maintenance of the project, and to establish regulations prohibiting discharge of pollutants into the channels.[3] The county is a "non-Federal interest" cooperating in the project, within the meaning of 42 U.S.C. § 1962d–5b. The landowner contends that the government's authority to proceed with the project is conditioned upon the existence of a valid and binding agreement with the county and that the present agreement is invalid because it violates limitations contained in the North Carolina Constitution on the county's power to bind itself to future monetary obligations without consent of the voters. The United States contends both that authorization of the project does not depend upon the existence of a valid agreement with the county and that the agreement which does exist is not in violation of the limitations in the state constitution.

Turning first to the constitutional issue, the landowner contends that Article V, Section 4, of the state constitution requires an agreement by a county such as the present one between Brunswick County and the United States to be submitted for approval by a majority of the qualified voters, which was not done in this case. The landowner's argument inexplicably relies entirely on a constitutional provision that was amended effective July 1, 1973, specifically to avoid the result for which the land-

2. Furthermore, acceptance of the landowner's argument would for practical purposes force the Corps to acquire land long before the taking became necessary, simply to avoid the possibility that inflation might push actual project costs over the $15,000,000 ceiling. It is fundamental that the government retains wide discretion in determining when to take land need-

ed for a public use. *E.g., United States v. Bowman*, 367 F.2d 768 (7th Cir. 1966).

3. Although the agreement obligates the county to provide the property necessary for the project, the United States is actually taking the land, to be reimbursed by the county.

owner now contends. As counsel for the Secretary of the North Carolina Department of Natural Resources and Community Development, appearing as *amicus curiae*, ably documents, the 1973 amendment to Article V, Section 4, was designed to narrow that provision's restriction on the local government's contracting powers. The previously effective language had been held to require submission to the voters of a wide variety of contract obligations such as those undertaken by the county here. *Foster v. North Carolina Medical Care Commission*, 283 N.C. 110, 195 S.E.2d 517 (1973); *Vance County v. Royster*, 271 N.C. 53, 155 S.E.2d 790 (1967). The 1973 amendment specifically defined "debt" to mean the borrowing of money by the local government, thereby excluding most general contractual obligations from the requirement of submission to the voters. The county has been specifically delegated the authority to enter into agreements concerning the undertaking of water resource projects. N.C.G.S. §§ 143–215.39 through 143–215.41. Neither these statutory provisions nor the agreement itself violate the language of Article V, Section 4, of the North Carolina Constitution as written on March 20, 1978, the date on which Brunswick County entered into the agreement with the United States. Because the agreement is valid and binding, the court need not reach the second issue of whether the authority of the United States to undertake the project is dependent upon the existence of such an agreement.

For these reasons, the defendant's motion for summary judgment is denied, and the plaintiff's motion for summary judgment is granted as to all issues except the amount of just compensation due the defendants.

SO ORDERED.