GEORGE HARVEY CAMPBELL, INDIVIDUALLY AND AS REPRESENTATIVE OF THE CITIZENS AND TAXPAYERS OF DURHAM, NORTH CAROLINA v. FIRST BAPTIST CHURCH OF THE CITY OF DURHAM, AN UNINCORPORATED ASSOCIATION; THE CITY OF DURHAM; THE REDEVELOPMENT COMMISSION OF THE CITY OF DURHAM; AND THE UNITED STATES OF AMERICA, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, JAMES T. LYNN, SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

No. 7414SC1023

(Filed 19 December 1978)

1. **Municipal Corporations §§ 4.5, 22.3— property exchange between city and church—private sale**

    The "exchange" of property between a redevelopment commission and a "redeveloper" such as the church in this case, is nothing more than a "private sale" of real property to "a nonprofit association or corporation operated exclusively for educational, scientific, literary, cultural, charitable or religious purposes" as described in G.S. 160-464(d), and such exchange must be in compliance with all of the requirements of G.S. 160-464(e)(4).

2. **Municipal Corporations § 4.5— redevelopment commission—conveyance to non-profit association—requirements**

    Before it can lawfully convey property to a nonprofit association or corporation within the meaning of G.S. 160-464(d), a redevelopment commission must: (1) hold a public hearing on the proposed conveyance after proper advertisement, (2) get approval for the proposed conveyance from the governing body of the municipality, and (3) agree with the proposed transferee on the consideration for the conveyance which is not less than the fair value of the property as determined by a committee of three professional real estate appraisers.

3. **Municipal Corporations §§ 4.5, 22.3— property exchange between city and church—failure to comply with statute—conveyances void**

    The purported conveyance of certain property by the Durham Redevelopment Commission to the First Baptist Church of Durham was null and void,

Campbell v. Church

since the Commission did not meet the statutory requirements of G.S. 160-464(e)(4) in that (1) the Commission had already determined to exchange the land at the time it published its advertisement in a local newspaper, though it was clear from the statute that the advertisement must precede the public hearing on the proposed conveyance, and (2) the appraisals on which the Commission based its determination of fair market value were made individually, though the statute clearly provided that the conveyance should not be for "less than the fair value of the property agreed upon by a committee of three professional real estate appraisers."

**4. Municipal Corporations § 4.5— instruments executed by urban redevelopment commission—no revival of instrument void from inception**

G.S. 160-472 (now G.S. 160A-522) providing that "[a]ny instrument executed by a commission and purporting to convey any right, title or interest in any property under this Article shall be conclusive evidence of compliance with the provisions of this Article" is not available to revive an instrument that was void from its inception.

**5. Municipal Corporations § 4.5; Taxation § 6.2— city's funding of urban renewal plan—grants-in-aid—no improper pledge of city's faith and credit**

A cooperation agreement entered into by the City of Durham and the Durham Redevelopment Commission whereby the city obligated itself to provide funding for one-third of the cost of the urban renewal plan did not pledge the faith and credit of the city in violation of Art. VII, § 6 of the N.C. Constitution, since the city planned to finance its part of the urban renewal plan with grants-in-aid; the city could substitute a valid grant-in-aid for any that were determined to be invalid or deficient in some way; and plaintiff failed to show that the city would be unable to meet its obligations under the cooperation agreement except by spending public funds for unnecessary purposes.

APPEAL by plaintiff from *Brewer, Judge.* Judgment entered 28 June 1974 in Superior Court, DURHAM County. Heard in the Court of Appeals on 16 October 1978.

This is a civil action commenced in 1973 by plaintiff on behalf of all citizens and taxpayers of the City of Durham seeking to have declared void an exchange of real estate between the First Baptist Church and the Redevelopment Commission of the City of Durham made pursuant to the urban renewal project for the Durham Central Business District. Plaintiff alleges that the exchange violated certain statutory requirements governing the disposal of land by a redevelopment commission, constituted an arbitrary and capricious abuse of discretion on the part of the Redevelopment Commission, and violated the Establishment Clause of the First Amendment to the United States Constitution. Plaintiff also seeks to have declared void a Cooperation Agree-

ment executed in connection with the Urban Renewal Project between the City of Durham and the Redevelopment Commission on the grounds that it violates former Art. V, §§ 2(5) and 4(2) of the North Carolina Constitution[1] prohibiting a municipality from pledging its faith and credit without voter approval.

The relevant uncontroverted facts involved in the long history of this case may be summarized as follows:

On 14 August 1964, the Redevelopment Commission approved an urban renewal plan, Project NC R-26, for the Central Business District of the City of Durham. On 22 March 1965, the Durham City Council approved the Redevelopment Commission's plan. In 1965, the Redevelopment Commission entered into a contract with the United States Urban Renewal Administration (now known as the Department of Housing and Urban Development) under which federal funds were made available to the Redevelopment Commission for purposes of land acquisition and redevelopment.

Pursuant to Project NC R-26, the Redevelopment Commission planned to acquire the two tracts of land involved in the exchange in the present case. The first tract, bounded by Cleveland, Elliot, and Roxboro Streets, was known as the "Markham property." This tract contained approximately 44,614 square feet of which 15.8% was to be used for widening Elliot and Roxboro Streets. The second tract, a strip of land fronting on Roxboro Street and located in the same block, was owned by the First Baptist Church. The Church property sought to be acquired was 12 feet wide and 234 feet long and contained approximately 2,803 square feet, all of which was to be used for widening Roxboro Street.

The Church indicated an interest in acquiring the Markham tract as early as 11 July 1964 when it sent a letter to the Redevelopment Commission stating: "We would like to record

---

1. Session Laws 1969, c. 1200, s. 1, proposed a constitutional amendment that was adopted by popular vote on 3 November 1970, effective 1 July 1973, which rewrote Article V, eliminating the provisions at issue in the present case. Prior to their repeal, the provisions of Article V at issue were as follows:

§ 2(5) No tax shall be levied or collected by the officers of any county, city or town, or other unit of local government, except for the necessary expenses thereof, unless approved by a majority of the qualified voters who vote thereon in any election held for the purpose.

§ 4(2) No county, city or town, or other unit of local government shall contract any debt, pledge its faith, or lend its credit except for the necessary expenses thereof, unless approved by a majority of the qualified voters who shall vote thereon in any election held for that purpose.

with you our interest in acquiring property adjacent to the First Baptist Church, Durham, North Carolina, at a fair market price. The above, of course, is contingent upon when and if the redevelopment plans go into effect involving property near our church."

In connection with its efforts to acquire the Markham property and the Church strip, the Redevelopment Commission employed four real estate appraisers to make appraisals of the value of the tracts. As it originally existed, the Markham property contained approximately 53,000 square feet and was zoned C-2 Commercial. On 1 September 1963, Joseph A. Robb filed a parcel acquisition report with the Redevelopment Commission stating that the value of the Markham property was $91,500. A second acquisition appraisal by Charles W. Smith found the value to be $94,000.

The Redevelopment Plan proposed certain changes in the zoning ordinance for the City of Durham for the project area. The Plan proposed that the area encompassing the Markham property and the Church property would have its zoning changed from C-2 Commercial to RA 7-16 Residential. The Plan further proposed that the subject property would be designated for "Institutional Use." On 11 March 1969, a new zoning ordinance was enacted by the City of Durham under which the subject property was zoned RA 7-16 Residential.

The Redevelopment Commission, contemplating the zoning change, contracted with three appraisers to have the Markham property appraised under the RA 7-16 Residential zoning. E. Judson Pickett, a member of the First Baptist Church, submitted two appraisals, one of $51,500 and a second of $12,800. Joseph A. Robb submitted an appraisal of $15,614 and Thomas T. Hay submitted an appraisal of $48,600.

On 22 December 1969, Joseph A. Robb submitted an appraisal of the Church strip to the Redevelopment Commission. Although the strip was zoned RA 7-16 Residential, Robb's appraisal of $18,750 was based on the value of the property under C-2 Commercial zoning. On 15 January 1970, Charles W. Smith submitted an appraisal of $16,050 also based on C-2 Commercial zoning. On 3 March 1970, the Redevelopment Commission deter-

mined that the Church property had a value of $17,500 based on these two appraisals.

On 22 December 1970, the Redevelopment Commission instituted condemnation proceedings in order to obtain title to the Markham property. A jury determined the value of the Markham property based on C-2 Commercial zoning to be $164,300. The Redevelopment Commission obtained the property for this price.

On 4 February 1970, the Redevelopment Commission adopted a resolution approving the concept of an exchange of the parcels of land involved in this case with the Church and authorizing its Executive Director and attorney "to proceed with expediting the land exchange." On 16 October 1972, the Durham City Council approved the land exchange between the Redevelopment Commission and the Church. Two advertisements were published by the Redevelopment Commission with respect to the proposed land exchange between it and the Church on 7 November and 14 November 1972. The published notice stated in pertinent part:

ADVERTISEMENT FOR EXCHANGE OF LAND

The Redevelopment Commission of the City of Durham, having by Resolution duly adopted, determined that in the best interest of the Project, hereby gives notice that on or after the 22nd day of November, 1972, it will enter into a contract to convey to The First Baptist Church of Durham, North Carolina to the Redevelopment Commission of the City of Durham of [sic] the hereinafter-described tract or parcel of land (Tract No. 2 Below)

The proposed price for Tract No. 1, which the Redevelopment Commission of the City of Durham proposes to convey to First Baptist Church of Durham, North Carolina is $.35 per square foot, for a total of $15,614.83. The proposed price for Tract No. 2, which First Baptist Church of Durham, N. C. proposes to convey to the Redevelopment Commission of the City of Durham is $17,500.00. Therefore, based on the foregoing exchange or [sic] properties between the Redevelopment Commission of the City of Durham and The First Baptist Church of Durham, North Carolina, the Redevelopment Commission of the City of Durham will owe the First Baptist Church of Durham, North Carolina the sum of $1,885.17,

which is the difference between the fair market value of both tracts, that is $15,614.83, the fair market value of Tract No. 1, less $17,500.00, the fair market value of Tract No. 2.

The two deeds effecting the exchange of the properties were recorded on 19 January 1973.

Plaintiff instituted this action on 7 February 1973 and filed motions for a preliminary injunction and temporary restraining order on the same date seeking to prevent the defendants from making any improvements on the property. A temporary restraining order was issued but subsequently dissolved when the court also denied plaintiff's motion for a preliminary injunction and for an injunction during pendency of his appeal. This Court, in *Campbell v. First Baptist Church*, 19 N.C. App. 343, 199 S.E. 2d 34, *cert. denied*, 284 N.C. 252, 200 S.E. 2d 652 (1973), held: "The order appealed from insofar as it denied plaintiff's motion for a preliminary injunction, is reversed and this cause is remanded to the Superior Court in Durham County for entry of a preliminary injunction in accordance with this opinion." The defendant's petitions for Writs of Certiorari and Supercedeas were denied by the North Carolina Supreme Court on 1 November 1973.

Plaintiff then filed a new motion for a preliminary injunction. On 10 December 1973, a peremptory trial date of 22 January 1974 was set and action on plaintiff's motion was continued until trial.

Trial was begun on 23 January 1974 and plaintiff presented evidence in support of his first cause of action. On 25 January 1974, defendants First Baptist Church and Redevelopment Commission moved to join as additional defendants the United States of America, Department of HUD, and certain individuals, firms, and corporations who had purchased or acquired by exchange real property from the Redevelopment Commission. This motion was granted; and on 28 January 1974, trial was recessed to allow the additional defendants joined in the second cause of action only to file answers.

Trial was resumed on 13 May 1974; and on 14 May 1974, all the additional defendants except the United States of America were dismissed. On 28 June 1974, final judgment in the case was entered in which the Court made detailed findings of fact, pertinent portions of which are quoted below:

3. That the Redevelopment Plan, as described in the above Paragraph 1, contained agreement that as of the date of the last Amendment—to wit, the 17th day of October, 1973—the net project cost for Project NC R-26 would be $18,460,878.00, and that available to the City to cover the City's one-third share of the net project cost, as contemplated in said Plan, was the sum of $6,994,650.00 non-cash local grants-in-aid (estimate accepted by HUD), and the sum of $96,100.00 representing credits generated by the tax-exempt status of real property held by the Redevelopment Commission of the City of Durham in the project area.

4. That contained in the Plan, as amended, was the construction of the following projects in or close to the project area of Project NC R-26 for the eligible cost of which the City will receive non-cash credits toward meeting its obligations as above described:

| ITEM | CREDIT |
|---|---|
| Demolition: | |
| Federal Aid Work | $      28,925 |
| Parking Lots Nos. 2 & 8 | 8,212 |
| Site Improvements: | |
| Traffic Signals | 1,782 |
| Pedestrian Way, Market Street | 24,647 |
| Morgan Street, R/W Corner | 92,420 |
| Holloway, Mangum & Roxboro Streets | 736,260 |
| Bridges-Roxboro Street & Peabody | 939,383 |
| Public or Supporting Facilities: | |
| Parking Facility No. 1 | 1,137,154 |
| Parking Facility No. 2 | 1,165,000 |
| Proposed Parking Facilities | 1,804,736 |
| Storm Drainage | 776 |
| Parking Lot No. 8 | 281,408 |
| Parking Lot No. 2 | 222,749 |
| Ramp Cost (A-G) | 61,378 |
| R/W Ramps (A-G) | 261,808 |
| Police Station | 228,012 |
| TOTAL | $6,994,650 |

That the Department of Housing and Urban Development has approved these projects as being eligible to provide non-cash credits and has agreed that if properly documented they would generate credits in the amounts listed beside each project.

5. That of these projects described above, all have been completed by the City of Durham except those described as Holloway, Mangum and Roxboro Streets, "Bridges — Roxboro Street and Peabody", "Proposed Parking Facilities", and "Storm Drainage". The Holloway, Mangum and Roxboro Streets project is now underway; and the bridges for Roxboro Street and Peabody Street have been planned and are budgeted, awaiting implementation. The proposed parking facilities, while agreed to by the City, have not been specifically located in the Project NC R-26 area. The storm drainage is to be accomplished from time to time. . . .

. . .

8. . . . . The Redevelopment Plan for Project NC R-26 . . . provides for two-thirds (2/3) of the net project cost to be provided by financial assistance from the Federal Government and one-third (1/3) to be provided by local non-cash grants-in-aid. Neither the City of Durham nor the Redevelopment Commission of the City of Durham has made any agreement which, in fact, creates a debt or pledge of faith or loan of credit by the City within the meaning of Article V, Section 2(5), or Section 4(2), of the Constitution of North Carolina. The Plan calls for no cash contribution by the City of Durham and contemplates that the entire contribution by the City would be made by credits generated by improvements constructed by the City in this and other projects; and there is no evidence nor contention that these improvements cannot be properly financed by use of City funds.

9. . . . . [If] the project is allowed to continue to its completion, the City of Durham can be expected to provide all of its share of the cost through non-cash local grants-in-aid — substantially all of which have already been provided except for certain additional proposed parking facilities which would apparently be necessary to support the activities contemplated for the project area in any event.

10. That in support of the financing plan contained in the Redevelopment Plan for Project NC R-26, as originally adopted, the Redevelopment Commission and the City of Durham entered into an agreement under the date of July 25, 1968, which is attached to the Complaint in this action as Exhibit "C". That agreement amplified and clarified the City's obligation assumed under the Redevelopment Plan for providing local grants-in-aid, and the supporting facilities described in said Contract to be constructed by the City did provide local non-cash credits which would cover the City's share of the then estimated cost of carrying out the project. This agreement expressly negates contributions by the City of funds in violation of constitutional provisions. It implements and clarifies the City's obligation contained in the financing plan of the Redevelopment Plan for the project, which financing plan called for no cash contribution by the City of Durham, and contemplated that the entire contribution of the City would be met by credits generated by improvements constructed by the City in this and other projects and credits arising because of the tax-exempt status of property held by the Commission.

. . .

14. That the parcel of land conveyed to the Church and the parcel of land conveyed to the Commission under the provisions of the Redeveloper's Contract entered into by the Church as a "Redeveloper" within the meaning of G.S. 160A-503 were both in the project area of Project NC R-26; and the Redevelopment Commission in making the conveyance to the Church and accepting the conveyance from the Church, and the City of Durham in approving the transaction, were proceeding under the provisions of the section of the State Urban Redevelopment Law, now designated G.S. 160A-514(c), and considered the transaction an "exchange" rather than a "sale" or a private sale to a non-profit association.

. . .

16. . . . The Church was a bona fide purchaser within the meaning of G.S. 160A-522.

The Court entered the following judgment:

1. That the conveyance by the Redevelopment Commission to the First Baptist Church and the conveyance by the First Baptist Church to the Redevelopment Commission, as described hereinabove, were lawful conveyances.

2. That the First Baptist Church, in any event, was a bona fide purchaser; and the provisions of G.S. 160A-522 are applicable.

3. That the defendant, First Baptist Church, has a good and valid title to the real property described in the Deed from the Redevelopment Commission to the said First Baptist Church . . .

4. That the Redevelopment Commission of the City of Durham has good and valid title to the property described in the Deed from the First Baptist Church to the Redevelopment Commission . . .

5. That the financing plan of the Redevelopment Plan for Project NC R-26 meets all of the requirements of the Urban Renewal Law of the State of North Carolina and the Federal Statutes and does not violate any constitutional provision of either the State or Federal Constitutions.

From the foregoing judgment, plaintiff appealed.

*Blackwell M. Brogden for the plaintiff appellant.*

*Haywood, Denny and Miller, by Egbert L. Haywood, for defendant appellee First Baptist Church of the City of Durham.*

*William Thornton for defendant appellee City of Durham.*

*Edwards & Manson, by Daniel K. Edwards, for defendant appellee Redevelopment Commission of the City of Durham.*

HEDRICK, Judge.

The first question presented by this appeal is whether the Redevelopment Commission complied with the applicable statutory provisions in disposing of the "Markham Property" by exchange with the First Baptist Church. G.S. § 160-462(6) [now G.S. § 160A-512(6)] contains a specific grant of power to a

redevelopment commission enabling it to sell, exchange, transfer or otherwise dispose of real property "subject to the provisions of G.S. § 160-464, and with the approval of the local governing body." Plaintiff contends that the conveyances effecting the exchange of properties are void because the Commission acted outside the authority granted to it under G.S. § 160-462(6) by its failure to comply with the statutory procecures contained in G.S. § 160-464(e)(4), [now G.S. § 160A-514(e)(4)] which provides:

In carrying out a redevelopment project, the commission may:

. . .

(4) After a public hearing advertised in accordance with the provisions of G.S. 160-463(e), and subject to the approval of the governing body of the municipality, convey [real property] to a nonprofit association or corporation . . . Such conveyance shall be for such consideration as may be agreed upon by the Commission and the association or corporation, which shall not be less than the fair value of the property agreed upon by a committee of three professional real estate appraisers currently practicing in the State . . .

The defendants contend that the exchange is governed by G.S. § 160-464(c) [now G.S. § 160A-514(c)], which provides:

A commission may sell, exchange, or otherwise transfer real property or any interest therein in a redevelopment project area to any redeveloper for residential, recreational, commercial, industrial or other uses or for public use in accordance with the redevelopment plan, subject to such covenants, conditions and restrictions as may be deemed to be in the public interest or to carry out the purposes of this Article; provided that such sale, exchange or other transfer, and any agreement relating thereto, may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality and after public notice and award as specified in subsection (d) below.

Defendants argue that the transaction involved is an "exchange" and is to be distinguished from a "sale" or a "private sale" and thus the proviso contained in subsection (c) is not ap-

plicable since it refers to subsection (d), which deals only with the statutory requirements where the disposal is by a "sale" or "private sale" and nowhere mentions "exchanges". G.S. § 160-464 (d) [now G.S. § 160A-514(d)] provides in part:

> Except as hereinafter specified, no sale of any property by the commission or agreement relating thereto shall be effected except after advertisement, bids and award as hereinafter set out . . . Nothing herein, however, shall prevent the sale at a private sale without advertisement and bids to the municipality or other public body, or to a nonprofit association or corporation operated exclusively for educational, scientific, literary, cultural, charitable or religious purposes, of such property as is specified in divisions (1), (2), (3), or (4) of subsection (e) of this section, provided that such sale is in accordance with the provisions of said subdivisions . . .

Defendants further contend that G.S. § 160-464(e)(4) is not applicable because it is merely one method by which a redevelopment commission may dispose of property and not the exclusive method. In essence, defendants argue that the Redevelopment Commission has authority to "exchange" property with a "redeveloper" such as the First Baptist Church without complying with any of the statutory procedures required where the disposal of land is by a sale, either public or private.

In *Campbell v. First Baptist Church*, 19 N.C. App. at 346, 199 S.E. 2d at 36, Chief Judge Brock speaking for this Court stated:

> It appears that compliance with the terms of the statute [G.S. § 160-464(e)(4)] by the Redevelopment Commission is necessary before it can legally make an *exchange* as described by plaintiff's evidence. Therefore, if the Redevelopment Commission makes such an *exchange* without effectively complying with the statute, it acts outside of its authority. (Emphasis supplied.)

[1] We hold that the "exchange" of property between a redevelopment commission and a "redeveloper" such as the First Baptist Church in this case, is nothing more than a "private sale" of real property to "a nonprofit association or corporation operated excusively for educational, scientific, literary, cultural,

charitable or religious purposes" as described in G.S. § 160-464(d) and that such exchange must be in compliance with all of the requirements of G.S. § 160-464(e)(4).

[2] Before it can lawfully convey property to such a "nonprofit association or corporation," a redevelopment commission must: (1) hold a public hearing on the proposed conveyance after proper advertisement, (2) get approval for the proposed conveyance from the governing body of the municipality, and (3) agree with the proposed transferee on the consideration for the conveyance which is not less than the fair value of the property as determined by a committee of three professional real estate appraisers.

[3] With regard to the proposed exchange in the present case, the parties stipulated to the following facts:

> The Redevelopment Commission of the City of Durham approved the exchange with the First Baptist Church and adopted Resolution No. 421 (P. T. 8) on February 4, 1970, and this action was confirmed by the Commission at its meeting held on February 4, 1972. Thereafter, the City Council of the City of Durham approved the transaction at its meeting held on the 16th day of October, 1972. Thereafter the Redevelopment Commission of the City of Durham caused to be published the advertisement (P. T. 13) which was, in fact, published in the Durham Morning Herald, a local newspaper published in Durham County, on November 7 and 14, 1972.

It is apparent from the parties' stipulation that the Redevelopment Commission in the present case had already determined to exchange the land at the time it published the advertisement. It is clear from the statute that the advertisement must precede the public hearing on the proposed conveyance.

The parties also stipulated that the appraisals on which the Redevelopment Commission based its determination of fair market value "were made individually and not as a committee." The statute provides that the conveyance shall not be for "less than the fair value of the property agreed upon by a committee of three professional real estate appraisers."

A redevelopment commission, like a municipal corporation, is created by and invested only with such powers as is given to it by statute. If such a commission or municipal corporation fails to

follow the procedures required by statute it acts outside of its authority and any such act is null and void *ab initio. Bagwell v. Brevard*, 267 N.C. 604, 148 S.E. 2d 635 (1966). In the present case, the Redevelopment Commission did not meet the statutory requirements set out in G.S. § 160-464(e)(4); consequently, the purported conveyance of the Markham property by it to the Church was null and void from its inception.

[4] We further hold that G.S. § 160-472 (now G.S. § 160A-522), providing that "[a]ny instrument executed by a commission and purporting to convey any right, title or interest in any property under this Article shall be conclusive evidence of compliance with the provisions of this Article" is not available to revive an instrument that was void from its inception. To allow G.S. § 160-472 to provide the Church with good title in this case would effectively result in nullifying the detailed statutory requirements delineating the authority of redevelopment commissions to dispose of property by public or private sale.

We hold that the trial court erred in concluding that the exchange of property between the Redevelopment Commission and the First Baptist Church "were lawful conveyances" and that "the First Baptist Church, in any event, was a bona fide purchaser; and the provisions of G.S. 160A-522 are applicable."

With respect to plaintiff's first cause of action, the judgment is reversed and the cause is remanded to the Superior Court of Durham County for further proceedings not inconsistent with this opinion.

[5] The second question presented by this appeal is whether the Cooperation Agreement entered into between the City of Durham and the Redevelopment Commission pledges the faith and credit of the City in violation of Art. VII, § 6 of the North Carolina Constitution.[2] Plaintiff argues that the Cooperation Agreement must be interpreted on the date it was entered into by the City and the Redevelopment Commission; that on that date, 25 July 1968, the City assumed an obligation to provide funding for one-third of the cost of the urban renewal plan; that should the City fail to accumulate sufficient non-cash grants-in-aid, it would then be re-

---

2. Although plaintiff's complaint, filed on 7 February 1973, alleged that the Cooperation Agreement violated the provisions of Art. V, §§ 2(5) and 4(2) of the North Carolina Constitution, quoted at *id.*, Art. VII, § 6 is the provision that was in effect at the time the Cooperation Agreement was executed.

quired to spend public funds in order to meet its obligation to provide one-third of the cost of the plan; and that any such spending of public funds would be unconstitutional because it was not for a "necessary" purpose and had not been approved by the voters.

The provisions of North Carolina Constitution, Art. VII, § 6, in force on 25 July 1968 when the Cooperation Agreement was entered into by the Redevelopment Commission and the City, are as follows:

> No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose.

This section of the State Constitution forbids the expenditure of tax funds for unnecessary purposes without voter approval and prohibits a pledge of the faith and credit of a municipality to be fulfilled from future receipts regardless of their source. *Yokley v. Clark*, 262 N.C. 218, 136 S.E. 2d 564 (1964).

In *Horton v. Redevelopment Commission*, 262 N.C. 306, 137 S.E. 2d 115 (1964), our Supreme Court was confronted with a similar challenge to the urban redevelopment plan for the City of High Point. The Court held that while taxes could not be levied to fund an urban redevelopment project, the City was not required to submit the approval or disapproval of the project to the voters, provided the City's obligations under the plan could be financed from sources other than taxes. The City had agreed to finance its portion of the cost of the plan through certain local grants-in-aid. The Court held that should it be determined on remand that one or more of the local grants-in-aid were invalid, impossible of accomplishment, or incapable of certainty of accomplishment, the City would be permitted to modify the plan in three possible ways: (1) by substituting valid and feasible grants-in-aid for those found to be invalid or impossible of accomplishment; (2) by reducing the redevelopment area so as to exclude areas requiring objectionable expenditures; or (3) by submitting a workable plan to the electors of the City.

We think that the Cooperation Agreement in the present case does not constitute an unconstitutional pledge of the City's faith and credit or an unpermitted use of tax revenues. Plaintiff's argument that the estimated grants-in-aid may ultimately be inadequate to meet the City's obligation is without merit since under *Horton v. Redevelopment Commission, supra,* the City is permitted to substitute a valid grant-in-aid for one that is invalid or deficient in some way. In order to prevail, we think plaintiff must show that the City would be unable to meet its obligations under the Cooperation Agreement except by spending public funds for unnecessary purposes. Plaintiff has failed to show either that the City has made any improper expenditures or that should any of the grants-in-aid be insufficient that the City could not substitute a valid grant-in-aid to cover the deficiency.

Even if the plaintiff were able to show that one or more of the local grants-in-aid was somehow deficient, the proper remedy would not be a permanent injunction against completion of the redevelopment plan, as requested by plaintiff, but would be, according to the decision in *Horton v. Redevelopment Commission, supra,* modification of the agreement or submission of the proposed expenditures to the voters. We note that at the time plaintiff commenced his lawsuit in 1973, substantial progress toward completion of the urban redevelopment plan had been made. At the time of trial, the only parts of the plan not completed were one parking facility and storm drainage. "[I]t requires no authority to sustain the proposition that if the act has been committed it cannot be restrained." *Yount v. Setzer,* 155 N.C. 213, 71 S.E. 209 (1911).

With regard to plaintiff's second cause of action, the judgment is affirmed.

Reversed and remanded in part, affirmed in part.

Chief Judge BROCK and Judge MITCHELL concur.